UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SHELBY EAGEN and JEFFERY<br>LAFOUNTAIN, individually and as<br>surviving parents of L.L., deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2:20-CV-56-SPM<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Strike Opinions of Rebecca Summary (Doc. 61). The motion has been fully briefed. For the reasons set forth below, the motion will be denied.

### I.   BACKGROUND

This action arises out of the death of L.L., the minor child of Plaintiffs Shelby Eagan and Jeffery LaFountain, four days after his birth by emergency C-section. Plaintiffs have brought one count of medical malpractice/wrongful death against Defendant United States of America under the Federal Tort Claims Act, principally based on the acts and omissions of Plaintiff Eagen's obstetrician.[1] Plaintiffs allege that Defendant's acts or omissions caused or directly contributed to the pain, suffering, and death of L.L. The case is set for a bench trial to begin on April 4, 2022.

In the instant motion, Plaintiffs move to strike the opinions of Defendant's expert economist (Dr. Rebecca Summary) regarding the amount of pecuniary damages they suffered from the death of their four-day-old child, L.L. Plaintiffs argue that Dr. Summary's opinions are inconsistent with the

---

[1] Plaintiffs also brought a second claim against the hospital; that claim has been resolved through settlement.

Missouri statute governing pecuniary damages in a case involving the death of a minor, and thus are not reliable and should be found inadmissible.

## II.    LEGAL STANDARDS

The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the trial judge the gatekeeping responsibility of determining that expert testimony evidence is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The gatekeeping role extends to all expert testimony, whether it is grounded in scientific, technical, or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

"The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony," *United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). Thus, the Court may "relax *Daubert*'s application for bench trials." *David E. Watson v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012).

## III.    DISCUSSION

In 2005, Missouri amended its wrongful death statute to add a presumption about pecuniary damages from the death of a non-wage-earning caregiver or a minor:

> In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be

sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable. If the deceased was not employed full time and was at least fifty percent responsible for the care of one or more minors or disabled persons, or persons over sixty-five years of age, there shall be a rebuttable presumption that the value of the care provided, regardless of the number of persons cared for, is equal to one hundred and ten percent of the state average weekly wage, as computed under section 287.250. **If the deceased is under the age of eighteen, there shall be a rebuttable presumption that the annual pecuniary losses suffered by reason of the death shall be calculated based on the annual income of the deceased's parents, provided that if the deceased has only one parent earning income, then the calculation shall be based on such income, but if the deceased had two parents earning income, then the calculation shall be based on the average of the two incomes.**

Mo. Rev. Stat. § 537.090 (emphasis added).

Defendant's expert economist, Dr. Summary, has offered an opinion regarding the pecuniary damages Plaintiffs have suffered in this case. Dr. Summary begins by stating, "Pecuniary loss to parents implies that monetary support will flow from child to parent." Report of Dr. Summary, Doc. 62-1, at 1. Dr. Summary then discusses studies showing that the vast majority of children provide no monetary support or unpaid care to their parents. *Id.* at 2-3. Dr. Summary also provides three different approaches to calculating possible pecuniary losses in this case. In the first approach, she reduces L.L.'s parents' average income to $25,106 based on their work life expectancy (the number of years they would be expected to remain in the workforce), assumes L.L would have started earning that amount at age 18, states that a single individual earning $20,000 to $29,999 consumes 123% of his or her income, and finds that there would be zero dollars remaining for L.L. to provide support to his parents. *Id.* at 3. In the second approach, she does not reduce the average income based on work life expectancy (and thus finds the annual income is $30,708), states that a person making $30,000 to $39,999 consumes 89.5% of his or her income, assumes the remaining $3,224 annually from L.L.'s age 18 to Plaintiff Shelby Eagan's life expectancy of 82 would be available as support, and calculates

the present value of that amount as $64,605. *Id.* at 3-4. In the third approach, she relies on studies showing the average financial support given by children to their parents annually by those who provide such support and studies showing the average value of unpaid care and helping to parents. She calculates the present value of the support L.L. would have provided under those assumptions as $127,373.

In her conclusion, she states:

> Based upon the well-founded economics literature, it is not possible to state with economic certainty that this deceased child would have provided any pecuniary support to his parents and thus I conclude that there is no pecuniary loss suffered by the parents as a result of the death of their child. If one were to assume that the decedent was one of the very few American children who would provide any pecuniary support to his/her parents, then I can calculate the range of support and that information is shown in [a table showing the calculations ranging from $0 to $127,373 under the three approaches.]

*Id.* at 7.

In the instant motion, Plaintiffs move to strike "any opinion by Dr. Summary that characterizes the statutory pecuniary damages as a loss of financial support from a baby to his parents, that attempts to rebut the presumption in the statute by imputing a personal consumption analysis or a start date of damages when the child would be 16 years of age, or a reduction based on the parents' work life expectancy." Pls.' Mem Supp., Doc. 62, at 2. Plaintiffs argue that all of these opinions create an absurdity that would make the statutory remedy meaningless; that the Missouri General Assembly intentionally included pecuniary damages to convey that the legislature valued the loss of the minor's life; and that the statute never characterizes the presumed pecuniary losses as a loss of financial support from child to parent. They state:

> While the legislature is silent on how the presumption is rebutted, it . . . would render the remedy meaningless if rebutting it was as easy as characterizing it as a loss of a minor's financial support and showing that the child was not likely to support the parents at age sixteen. If that were what the legislature intended in making this remedy for those who lose a non-wage earner, the remedy would **never** exist. One hundred percent of the claims for the statutory pecuniary damages would be rebutted if the

> means to rebut it were as simple as suggesting that the child would not support his/her
> parents the instant he/she was born or during his/her minority.

*Id.* at 4. Plaintiffs argue that the Court must give effect to the legislative intent as reflected in the plain

language of the statute and should not permit expert testimony that is essentially a rejection of the law.

Defendant argues that the statute is silent as to how to calculate the pecuniary losses beyond

using the average annual income of the parents as the base; that Dr. Summary's calculations are based

on the parents' average income, and that the adjustments made by Dr. Summary are reasonable within

the statute's plain language. Defendant also notes that the express language of the statute also does

not authorize any of the present value or discount rate adjustments made by Plaintiff's expert in this

case, yet Plaintiffs do not oppose those adjustments. Defendant also argues that Plaintiff's argument

is essentially that the rebuttable presumption in the statute can never be rebutted.

The Court finds Defendant's position persuasive. As Defendant points out, the United States

District Court for the Western District of Missouri considered a very similar issue in *Flowers v. United

States*, Case No. 17-01028-CV-W-LMC, 2020 WL 1131145 (W.D. Mo. March 9, 2020), another

minor death case. In *Flowers*, the plaintiffs sought to exclude the opinions of the defendant's expert

regarding pecuniary damages, arguing that his methodology contradicted Missouri law and was

therefore unreliable. Specifically, they argued that "1) [the expert's] damage calculations are not based

on the annual income of [the decedent's] parents; 2) his calculations are based on a 'net loss' model

rather than the 'annual pecuniary losses suffered' model required by the statute; 3) [the expert]

improperly classified damages as support to the parents, rather than standalone pecuniary damages;

and 4) [the expert's] use of a flat-line 90% personal consumption by [the decedent] during his lifetime

is unreliable and illogical." *Id.* at *2. The court rejected Plaintiffs' argument, stating:

> Plaintiffs' arguments miss the mark with regard to the Missouri wrongful death
> damages statute. Essentially, Plaintiffs fail to fully understand the rebuttable nature of
> the presumption. The statute requires that the fact finder "base the pecuniary loss upon
> the annual income of the deceased minor's parent or parents," but provides an
> "opportunity to rebut that number in an upward or downward manner with rebuttal

evidence and argument." *Mansil v. Midwest Emergency Med. Servs., P.C.,* 554 S.W.3d 471, 477 (Mo. Ct. App. 2018), reh'g and/or transfer denied (July 3, 2018), transfer denied (Sept. 25, 2018). [The expert] both recognized and addressed the distinction between mandating a pecuniary loss model and utilizing a base model that could then be rebutted based on the facts of the case. (Doc. #49-1 at 5 ¶17.) Because the statute is only a rebuttable presumption, and [the expert] adequately discussed the reasons for the upward and/or downward departures from the base, this Court rejects Plaintiffs' argument that the opinion is unreliable. Additionally, as the Court in *Mansil* found, Missouri law permits reductions based on consumption. *Mansil*, 554 S.W.3d at 577-78. Simply stated, the presumption in Missouri law can be rebutted. [The expert's] opinions are not at odds with the Missouri wrongful death damages statute and therefore, this Court rejects Plaintiffs' argument that [the expert's] opinions are unreliable. Furthermore, this Court notes that Plaintiffs' arguments are really about the credibility and weight of the opinion evidence, not the admissibility of the evidence.

*Flowers v. United States*, No. 17-01028-CV-W-LMC, 2020 WL 1131145, at \*3 (W.D. Mo. Mar. 9, 2020).[2]

Also instructive is *Coterel v. Dorel Juvenile Group, Inc.*, No. 2:13-CV-4218-SRB, 2015 WL 12833365 (W.D. Mo. Jan. 29, 2015). In that case, the defendant moved to exclude the testimony of Dr. Krueger (Plaintiff's expert in this case), arguing that Dr. Krueger's interpretation of Mo. Rev. Stat. § 537.090 was erroneous. *Id.* at \*3. The court denied the motion, stating in part:

The jury is used to hearing two opposing views of the damages and the calculation of wrongful death damages "must be left to the common sense of the jury." *Cobb*, 576 S.W.2d at 739. This case will be no different. Plaintiff's expert will opine the pecuniary loss of $1,752,332.00; defendant's expert will apparently opine there are no pecuniary losses. The jury will have to decide—as they do in every case—what the damages will be.

*Id.* at \*3. *See also Mansil v. Midwest Emergency Med. Servs., P.C.*, 554 S.W.3d 471 (Mo. Ct. App. 2018) (rejecting the defendant's argument on appeal that the trial court had erred in admitting the testimony of Dr. Krueger regarding pecuniary losses from the death of a minor child; stating, "The starting point of a jury's consideration of the latter sentence of section 537.090 is to base the pecuniary

---

[2] The Court acknowledges the two unpublished Missouri trial court decisions, attached as exhibits to Plaintiff's motion, in which courts apparently came to different conclusions. However, one of those decisions lacks any reasoning at all, and the other is not persuasive in light of the contrary authority discussed herein.

loss upon the annual income of the deceased minor's parent or parents, subject to the opportunity to rebut that number in an upward or downward manner with rebuttal evidence and argument" and finding that Dr. Krueger's "methodology in reaching his estimate was reasonable within the statute's plain language").

Like the court in *Flowers*, this Court finds that the opinions at issue here are not at odds with the Missouri wrongful death damages statute. The statute expressly states that the "presumption that the annual pecuniary losses suffered by reason of the [minor's] death shall be calculated based on the annual income of the deceased's parents" is "rebuttable." Mo. Rev. Stat. § 537.090. That plain language does not, in any way, limit the evidence either party may use to attempt to rebut the presumption, either in an upward or downward manner. Dr. Summary has provided in her report several reasons, based in data and the economic literature, both for her opinion that there is no pecuniary loss in this case and for her alternative calculations based on various adjustments to parental income. There is nothing in the statute to preclude Defendant from attempting to rebut the statutory presumption through either approach. The Court also notes that, contrary to Plaintiff's suggestion that under Dr. Summary's approach, the remedy of pecuniary damages in a minor death case "would never exist," even Dr. Summary's own calculations suggest that pecuniary damages could exist, and increase, with increases in the minor's parents' average incomes. Dr. Summary's opinions are sufficiently reliable to be admissible, and it will be up to the factfinder—here, the Court—to decide how much weight to give to her testimony.

For all of the above reasons, the Court rejects Plaintiffs' argument that Dr. Summary's opinions are unreliable because they are at odds with the relevant Missouri statute. Plaintiffs' motion will be denied.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike Opinions of Rebecca Summary

(Doc. 61) is **DENIED.**

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of March, 2022.

.

-8-